UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, v. ERIK SILVA, Defendant. | Case No. 4:17-cr-554-PJH-03<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE AND GRANTING LEAVE TO FILE SECOND MOTION ON LIMITED GROUND**<br><br>Docket No. 169 |
|---|---|

Before the court is the represented motion, initially filed pro se, of defendant Erik Silva for reduction of sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) for compassionate release due to the severity of the COVID-19 pandemic affecting the Federal Correctional Institution where he is incarcerated and the risk of serious complications from COVID-19 due to his chronic and severe medical conditions. Dkt. 169, 174. The government opposes the request. Dkt. 172. For the reasons set forth below, Silva's motion for compassionate release is DENIED with leave to file a second motion on a limited ground.

**I.   BACKGROUND**

On October 26, 2017, a grand jury returned an indictment charging Silva with four controlled substance offenses: Count One for conspiracy to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing methamphetamine, and 500 grams or more of a mixture and substance containing cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and (b)(1)(B); Count Two for distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C);

Count Three for distribution of 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii); and Count Four for distribution of 50 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).

On June 20, 2018, Silva entered a guilty plea pursuant to a written plea agreement as to Count One of the indictment for conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A).  On September 19, 2018, the court imposed a sentence, as amended on October 4, 2018, of a 57-month term of imprisonment; three years supervised release; and $100 special assessment.  The government agrees that Silva has served 32 months of his 57-month term of imprisonment, with an anticipated release date of November 16, 2021, assuming good time credit reduction.

Silva is 27 years old, serving his sentence at FCI Butner Medium I in North Carolina.  Silva tested positive for COVID-19 on April 23, 2020, was routinely monitored and presented no symptoms of COVID-19, and remains asymptomatic.  As of July 16, 2020, the Bureau of Prisons website (https://www.bop.gov/coronavirus/) reports that five inmates at FCI Butner Medium I are positive for COVID-19, with 200 recovered inmates and 30 recovered staff members, and nine inmate deaths.

It is undisputed that Silva suffers from Type I diabetes requiring insulin injections three times a day, hypertension, blindness in his left eye caused by diabetic retinopathy, and impaired vision and rapidly progressing cataracts in his right eye requiring cataract removal; an ulcer on his left foot was treated by prison health services; and he reported that he takes blood pressure medication to help prevent damage to kidneys.  Gilbert Decl., Ex. A (under seal).  Silva has not cited documentation in his prison medical records to support his initial assertions of a compromised immune system and kidney failure.  On May 7, 2020, Silva submitted an inmate request for compassionate release or home confinement to the Warden of FCI Butner.  The BOP denied Silva's request to be

designated for home confinement, and on June 26, 2020, the Warden at FCI Butner denied Silva's request for Compassionate Release. Gilbert Decl., Exs. C–E.

Silva, proceeding in pro per, filed the instant motion for compassionate release on June 23, 2020. The court appointed CJA counsel to represent Silva on the motion for compassionate release. The government filed an opposition, and counsel for Silva filed a reply brief. The court determines that the matter is suitable for determination without a hearing and is submitted on the papers.

## II.   DISCUSSION

### A.   Compassionate Release

#### 1.   Legal Standard

A court generally may not correct or modify a prison sentence once it has been imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003). The court may modify a previously imposed sentence upon motion of the BOP or motion of the defendant under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act which added a provision to allow defendants, not only the Director of the BOP, to file a motion for reduction of sentence after exhausting administrative remedies or waiting 30 days after the warden's receipt of a request. *See United States v. Shields*, 2019 WL 2359231 at *1 (N.D. Cal. June 4, 2019) (citations omitted). Section 3582(c)(1)(A)(i) now provides that the court may reduce an imposed term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," after considering the applicable factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

### 2. Requirements for Relief

As applicable to Silva's motion, compassionate release is warranted if the court finds that extraordinary and compelling reasons warrant such a reduction, after considering the applicable § 3553(a) factors, and that such a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i). The policy statement applicable to § 3582(c)(1)(A) motions, U.S.S.G. § 1B1.13, states the statutory requirements of extraordinary and compelling reasons, consideration of § 3553(a) factors, and reduction consistent with the policy statement, and further requires that the court determine that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2).

#### a. Extraordinary and Compelling Reasons

The application notes to the § 1B1.13 policy statement identify physical or medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

To establish extraordinary and compelling reasons in support of his compassionate release motion, Silva asserts that he has Type I diabetes and hypertension, which the Centers for Disease Control and Prevention recognize might increase the risk for severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated June 25, 2020). The government does not dispute that these underlying health conditions might increase the risk of severe illness, and concedes the possibility that chronic health conditions that are known to elevate the risk of complications due to COVID-19,

4

combined with the heightened risk of infection while incarcerated in a prison that experiences a COVID-19 outbreak, may satisfy the "extraordinary and compelling" standard as set forth in the application note to U.S.S.G. § 1B1.13. Opp. at 9–10. The government points out, however, that Silva has already contracted and recovered from COVID-19 with no symptoms or complications. The government has also demonstrated that the BOP has taken extensive screening, social distancing, sanitation, and testing measures to prevent and stop the spread of COVID-19 at the Butner Federal Correctional Complex. Gilbert Decl., Exs. F, G. The court finds that Silva's own medical history reflecting lack of symptoms and apparent recovery after contracting COVID-19 minimize the risk of potential complications from COVID-19 due to his underlying medical conditions. On this record, Silva's hypertension and Type I diabetes do not constitute an extraordinary and compelling reason for a reduction of sentence. *See United States v. Luck*, 2020 WL 3050762, at *2 (N.D. Cal. June 8, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (citing *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020)).

Silva also argues that he is medically vulnerable due to COVID-19 because he requires cataract surgery to preserve vision in his right eye, having lost vision in his left eye, and represents that FCI Butner is in lockdown with no foreseeable opportunity for Silva to receive the cataract removal procedure. Dkt. 174 at 2. As the government points out, vision impairment is not a risk factor that would render Silva more susceptible to severe complications from COVID-19. Opp. at 11. Because Silva's cataract diagnosis does not put him at a greater risk of severe illness from COVID-19, this ground for seeking compassionate release is DENIED.

To the extent that Silva asserts that cataract removal surgery is necessary to prevent complete blindness, this presents an altogether independent ground for seeking compassionate release that was not squarely presented as a serious medical condition separate from the risk of COVID-19 complications. Silva asserts that the cataract extraction procedure is unavailable at the correctional institution due to lockdown, but

provides no evidence to support this assertion, such as medical records or communications from the prison's health services indicating that the procedure is unavailable for the foreseeable future, particularly in light of medical records indicating that prison health services requested an expedited ophthalmology off-site procedure with a target date of July 22, 2020. Gilbert, Ex. A at 1. For its part, the government does not sufficiently address the severity of this serious medical condition, other than acknowledging that BOP medical staff concurred with an outside ophthalmologist's recommendation for cataract extraction and requested that the procedure be expedited, nor does the government address whether prison restrictions due to the pandemic have impacted delivery of health services and diminished Silva's "ability of the defendant to provide self-care within the environment of a correctional facility."

Because the parties have not adequately investigated or briefed the issue whether the "rapidly progressing" cataract in Silva's right eye, and the asserted unavailability of the necessary extraction procedure under current conditions at FCC Butner, would constitute an extraordinary and compelling reason warranting reduction of sentence pursuant to § 3582(c)(1)(A)(i), the court GRANTS LEAVE TO FILE A SECOND MOTION FOR COMPASSIONATE RELEASE, if warranted, on the sole ground that the cataract removal procedure necessary to prevent total blindness is not available to Silva while incarcerated.

b.      Section 3553(a) Factors

Considering the applicable § 3553(a) factors, the court finds that a reduction of Silva's 57-month custodial sentence to time served where he has served only 32 months, or about 56% of his prison sentence, would not serve the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, or to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(A)–(C). Looking to the nature and circumstances of the offense and the history and characteristics of the defendant, Silva admitted that from at least February 1 through October 19, 2017, he

6

participated in a conspiracy to distribute methamphetamine throughout the San Francisco Bay Area, admitting to distributing a total of 307.7 grams of a mixture or substance containing methamphetamine and 56.4 grams of 99% pure methamphetamine. The court imposed a term of imprisonment at the low end of the Sentencing Guidelines range of 57 to 71 months imprisonment, based upon a total offense level of 25 and a criminal history category of I. A reduction of Silva's sentence from 57 months to 32 or 33 months would result in a sentence about 24 months below the applicable guideline range and a disparity compared to the sentences imposed for similar crimes under the Guidelines. *See* § 3553(a)(4)(A), (6). These § 3553(a) factors weigh against a reduction in sentence.

The court also considers "the need for the sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). The prison medical records show that Silva is getting adequate care and medication by prison health services for his chronic conditions of diabetes and hypertension. The medical records also show that the prison health services has examined and monitored the need for cataract removal in his right eye, referred Silva for an outside ophthalmology consultation, and requested an expedited off-site procedure with a target date of July 22, 2020. Gilbert Decl., Ex. A at 1. On this record, the need to provide effective medical care under § 3553(a)(2)(D) does not weigh in favor of a reduction in sentence. To the extent that Silva asserts that cataract removal in his right eye is necessary to prevent complete blindness and that he has no foreseeable opportunity to receive this procedure while incarcerated, this ground for relief was not adequately presented or briefed by the parties and the court does not take that assertion into consideration on the present record.

Having considered the relevant § 3553(a) factors, the court finds that relief is not warranted on the grounds presented in the present motion for compassionate release.

    c.  **Danger to Community**

With respect to the applicable policy statement set forth in U.S.S.G. § 1B1.13(2) that compassionate release requires a finding that the defendant is not a danger to the

safety of another person or to the community, the parties have not addressed the relevant factors. In the absence of a showing of extraordinary and compelling reasons to grant compassionate release on the present motion, the court declines to weigh the danger question at this time.

### B. Home Confinement

To the extent that Silva asks the court to order release to home confinement to serve the remainder of his time in custody, the request is denied on the ground that the court has no authority to designate the place of confinement. The Ninth Circuit recognizes that "[t]he Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence." *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011) (per curiam) (citing 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment.")).

### III. CONCLUSION

For the reasons set forth above, Silva's motion for compassionate release under § 3582(c)(1)(A) on the grounds that Silva's underlying medical conditions subject him to heightened risk of complications from COVID-19 is DENIED. The court GRANTS LEAVE TO FILE A SECOND MOTION FOR COMPASSIONATE RELEASE on the limited ground that cataract removal is necessary to prevent complete blindness and that the procedure is unavailable while he is incarcerated due to lockdown conditions. The court further ORDERS that the appointment of CJA counsel be extended to assist Silva with investigating and filing the motion on that limited ground.

**IT IS SO ORDERED.**

Dated: July 17, 2020

/s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge